**COMMITTEE OF DENTAL AMALGAM ALLOY MANUFACTURERS, et al.,** Plaintiffs,

v.

**Dr. Carol HENRY, et al., Defendants.**

Environmental Law Foundation, Intervenor.

Civ. No. 93–1439–B(BTM).

United States District Court, S.D. California.

Aug. 24, 1994.

**1280**

Susan S. Fiering, Deputy Atty. Gen., State of Cal., Dept. of Justice, Oakland, CA, for state defendants.

James Wheaton, Alice Chang Kaufman, Environmental Law Foundation, Oakland, CA, for intervenor.

Stanley W. Landfair, Carol Brophy, McKenna & Cuneo, Los Angeles, CA.

Richard G. Opper, McKenna & Cuneo, San Diego, CA, for plaintiffs.

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON ISSUE OF PREEMPTION; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON ISSUE OF COMMERCE CLAUSE VIOLATION; DENYING DEFENDANTS' AND INTERVENOR'S MOTIONS TO DISMISS OR FOR SUMMARY JUDGMENT; AND DENYING DEFENDANTS' MOTIONS TO STRIKE AND FOR DISCOVERY

BREWSTER, District Judge.

■  Plaintiffs' motion for summary judgment, defendants' and intervenor's motions to dismiss, or in the alternative for summary judgment, and defendants' motions to strike the declaration of David Link and for additional discovery, were heard before the Honorable Rudi M. Brewster on May 16, 1994. Stanley Landfair, Esq., and Carol Brophy, Esq., appeared for plaintiffs; Susan Fiering, Esq., appeared for the State defendants; James Wheaton, Esq., and Alice Chang Kaufman, Esq., appeared for the intervenor defendant. The court continued these motions for supplemental briefing and further review. Upon further consideration of the moving and responding papers, the supplemental briefs and submissions,[1] the court hereby GRANTS summary judgment for plaintiffs on the issue of preemption, DENIES plaintiff's motion for summary judgment on the Commerce Clause claim, and DENIES defendants' motions.

## I.  Background

Plaintiffs brought this declaratory and injunctive relief action seeking a determination that a California state statute, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65"), Cal.Health & Safety Code §§ 25249.5—25249.13, is preempted by the Medical Device Amendments ("MDA") of 1976 to the Federal Food, Drug and Cosmetic Act ("FFDCA"), 21 U.S.C. §§ 321–394, in so far as Proposition 65 imposes warning requirements for dental mercury that are different from or in addition to requirements under the MDA. Plaintiffs also contend that Proposition 65 violates the Commerce Clause.

Proposition 65 states:

**§ 25249.6.  Required warning before exposure to chemicals known to cause cancer or reproductive toxicity**

No person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual, except as provided in Section 25249.10.

**§ 25249.10.  Exemptions from warning requirement**

Section 25249.6 shall not apply to any of the following: (a) An exposure for which federal law governs warning in a manner that preempts state authority ... [or] (c) An exposure for which the person respon-

---

1.  The court requested supplemental briefs, of no more than ten pages, on the issue of labelling. The court declines to consider plaintiffs' June 7, 1994, letter because it exceeds the court's request. The court accepts ELF's May 12, 1994, letter and plaintiff's May 23, 1994, letter, because they cite recently-decided authority. The court accepts all three supplemental briefs.

sible can show that the exposure poses no significant risk....

The State of California has listed dental mercury as a "chemical known to the state to cause ... reproductive toxicity."

All medical devices are classified under the MDA. Dental mercury is a Class I device regulated by the MDA. *See* 21 C.F.R. § 872.3700(b). The federal Food and Drug Administration ("FDA") has defined dental mercury as "a device composed of mercury intended for use as a component of amalgam alloy in the restoration of a dental cavity or a broken tooth." *Id.* Amalgam alloy is a Class II device. *See* 21 C.F.R. § 872.3050. Dental amalgam, which is the combination of dental mercury and amalgam alloy, is not a "device" under the MDA. However, to the extent that its two component parts are regulated by the MDA, dental amalgam is, ipso facto, regulated by the MDA.[2]

All medical devices, whether Class I, II, or III, are subject to "general controls." *See* 21 U.S.C. § 360c(a)(1)(A). The general controls include a provision for labeling and warnings. *See* 21 U.S.C. § 352(f). Section 352(f) states:

A drug or device shall be deemed to be misbranded—

... Unless its labeling bears (1) adequate directions for use; and (2) such adequate warnings against use in those pathological conditions or by children where its use may be dangerous to health, or against unsafe dosage or methods or duration of administration or application, in such manner and form, as are necessary for the protection of users, except that where any requirement of clause (1) of this paragraph, as applied to any drug or device, is not necessary for the protection of the public health, the Secretary shall promul-

gate regulations exempting such drug or device from such requirement.

The Secretary has promulgated regulations exempting prescription devices from the requirement of clause (1). *See* 21 C.F.R. § 801.109.[3] Section 801.109 states, in relevant part:

A device which, because of any potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use is not safe except under the supervision of a practitioner licensed by law to direct the use of such device, and hence for which "adequate directions for use" cannot be prepared, shall be exempt from section 502(f)(1) [352(f)(1) ] of the act if all of the following conditions are met:·

(a) The device is:

(1)(i) In the possession of a person, or his agents or employees, regularly and lawfully engaged in the manufacture, transportation, storage, or wholesale or retail distribution of such device; or

(ii) In the possession of a practitioner, such as physicians, dentists, and veterinarians, licensed by law to use or order the use of such device; and

(2) Is to be sold only to or on the prescription or other order of such practitioner for use in the course of his professional practice.

(b) ...

(c) Labeling on or within the package from which the device is to be dispensed bears information for use, including indications, effects, routes, methods, and frequency and duration of administration, and any relevant hazards, contraindications, side effects, and precautions under which practitioners licensed by law to administer the device can use the device safely and for the purpose for which it is intended, in-

---

**2.** The court need not consider whether the FDA is treating dental amalgam as a device, whether it believes it is regulating dental amalgam, or whether it intends to regulate dental amalgam. The court finds, as a matter of logic, that any regulation of dental mercury will, ipso facto, regulate any product containing dental mercury, including dental amalgam. Therefore, this court's ruling extends to dental amalgam. The court need not reach amalgam alloy as Proposition 65 does not regulate it.

**3.** From oral argument, the court understands that dental mercury and amalgam alloy traditionally were mixed in the dentist's office, but more recently are sold pre-packaged in capsule form. The court requested plaintiffs to submit a sample of labelling for dental amalgam capsules to enable it to understand the application of this regulation to dental mercury, not to determine whether plaintiffs' labelling complies with the regulation, which is not at issue in this case.

cluding all purposes for which it is advertised or represented: *Provided, however,* That such information may be omitted from the dispensing package if, but only if, the article is a device for which directions, hazards, warnings, and other information are commonly known to practitioners licensed by law to use the device. Upon written request, stating reasonable grounds therefor, the Commissioner will offer an opinion on a proposal to omit such information from the dispensing package under this proviso.

(d) ...

(e) ....

■ In addition, the statute provides that the FDA has the authority to impose any necessary warning requirements on medical devices. *See* 21 U.S.C. § 360h(a). The relevant part of § 360h(a) states:

If the Secretary determines that—

(1) a device intended for human use which is introduced or delivered for introduction into interstate commerce for commercial distribution presents an unreasonable risk of substantial harm to the public health, and

(2) notification under this subsection is necessary to eliminate the unreasonable risk of such harm and no more practicable means is available under the provisions of this chapter (other than this section) to eliminate such risk,

the Secretary may issue such order as may be necessary to assure that adequate notification is provided in an appropriate form, by the persons and means best suited under the circumstances involved, to all health professionals who prescribe or use the device and to any other person (including manufacturers, importers, distributors, retailers, and device users) who should

properly receive such notification in order to eliminate such risk....

There is no genuine issue of material fact that the FDA has considered, and rejected, imposing reproductive toxicity warning requirements for dental amalgam. *See* Brophy Decl., Exhs. 5, 7, 14, 17, 28–31, 33; Link Decl. at 60–61;[4] 40 Fed.Reg. 21,848 (May 19, 1975); 42 Fed.Reg. 60,193 (Nov. 29, 1977).

## II. Preemption Standards

■ The MDA contains an explicit preemption provision. *See* 21 U.S.C. § 360k. Section 360k states:

(a) **General rule**

Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—

(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.[5]

(b) **Exempt requirements**

Upon application of a State or a political subdivision thereof, the Secretary may, by regulation promulgated after notice and opportunity for an oral hearing, exempt from subsection (a) of this section, under such conditions as may be prescribed in such regulation, a requirement of such State or political subdivision applicable to a device intended for human use if—

(1) the requirement is more stringent than a requirement under this chapter which would be applicable to the device if an exemption were not in effect under this subsection; or

(2) the requirement—

**4.** Defendants have moved to strike the Declaration of David Link, who managed the FDA's medical device program from 1970 to 1980. This motion is DENIED. Defendants also have requested that the court grant them leave to conduct additional discovery on the FDA's consideration of, and rejection of, warnings for reproductive toxicity. This request also is DENIED. Defendants had ample opportunity to conduct discovery, as this motion was continued

several times at the parties' request. Furthermore, FDA's consideration of imposing reproductive toxicity warning requirements is not an issue which should have taken defendants by surprise.

**5.** There is no question that Proposition 65 "relates" to the safety of dental mercury.

(A) is required by compelling local conditions, and

(B) compliance with the requirement would not cause the device to be in violation of any applicable requirement under this chapter.

The State of California has not received an exemption from § 360k(a).

The Supreme Court has established the standard a district court applies when faced with a statutory preemption provision. *See Cipollone v. Liggett Group, Inc.,* —— U.S. ——, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). It said:

> When Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a "reliable indicium of congressional intent with respect to state authority," ... "there is no need to infer congressional intent to pre-empt state laws from the substantive provisions" of the legislation.

*Id.* at ——, 112 S.Ct. at 2618. Therefore, the court looks only to the explicit preemption provision at § 360k(a), not to legislative history of congressional intent. The court also said:

> Congress' enactment of a provision defining the preemptive reach of a statute implies that matters beyond that reach are not preempted.... Therefore, we need only identify the domain expressly preempted by [the preemption provisions].

*Id.* Pursuant to *Cipollone*, then, this court's task is to determine the preemptive reach of § 360k(a); that is, whether § 360k(a) extends to state reproductive toxicity warning requirements for dental mercury or products containing dental mercury.

■ There is a general presumption against preemption, particularly in the regulation of health and safety matters, which are "primarily, and historically, a matter of local concern." *Chemical Specialties Manufacturers Ass'n, Inc. v. Allenby,* 958 F.2d 941, 943 (9th Cir.1992), *cert. denied,* —— U.S.

——, 113 S.Ct. 80, 121 L.Ed.2d 44 (1992). This presumption applies even when a statute contains an explicit preemption provision. *See Cipollone,* —— U.S. at ——, 112 S.Ct. at 2618 ("we must construe these provisions in light of the presumption against preemption"). Therefore, if the court were to find that the preemptive reach of § 360k(a) is not clear from a reading of the statute, the presumption against preemption would encourage this court to construe the preemption provision narrowly.

■ Here, the preemptive reach of § 360k(a) is clarified by FDA regulation.[6] *See* 21 C.F.R. § 808.1(d). Section 808.1(d) states:

> State or local requirements are preempted only when the Food and Drug Administration has established specific counterpart regulations or there are other specific requirements applicable to a particular device under the act, thereby making any existing divergent State or local requirements applicable to the device different from, or in addition to, the specific Food and Drug Administration requirements. There are other State or local requirements that affect devices that are not preempted by section 521(a) [360k(a)] of the act because they are not "requirements applicable to a device" within the meaning of section 521(a) [360k(a)] of the act.

The regulation cites various examples of State or local requirements that are not regarded as preempted. The example relevant to this case is as follows:

> (1) Section 521(a) [360k(a)] does not preempt State or local requirements of general applicability where the purpose of the requirement relates either to other products in addition to devices (e.g., requirements such as general electrical codes, and the Uniform Commercial Code (warranty of fitness)), or to unfair trade practices in which the requirements are not limited to devices.

*See* 21 C.F.R. § 808.1(d)(1).

### III. Preemption

As discussed above, the MDA and its regulations do not impose a specific reproductive

---

**6.** The FDA's interpretation of § 360k(a) is controlling, so long as it is not contrary to congressional intent. *King v. Collagen Corp.,* 983 F.2d 1130, 1134–35 (1st Cir.1993). Neither party has contested the validity of the regulations.

toxicity warning requirement on dental mercury. Therefore, it is clear that the FDA has not established "specific counterpart regulations" which would preempt state reproductive toxicity warning requirements. *See* 21 C.F.R. § 808.1(d). However, the language of the regulation makes clear that the MDA need not include a counterpart regulation in order to preempt state law. The issues remaining, then, are (1) whether "there are other specific requirements applicable to a particular device under the act, thereby making any existing divergent State or local requirements applicable to the device different from, or in addition to, the specific Food and Drug Administration requirements," or (2) whether Proposition 65 is a "requirement of general applicability." *Id.*

### A. Other Specific Requirements

The court finds there are "other specific requirements applicable to" dental mercury under the MDA and its regulations which render Proposition 65's warning requirement "different from, or in addition to" the MDA's requirements. First, the FDA's refusal to impose a reproductive toxicity warning requirement on dental mercury is preemptive. Defendants[7] have argued that only an express provision of the MDA or its regulations can be preemptive. The court finds that the FDA's decision not to impose such a warning requirement must not be viewed as silence or as a failure to regulate. The MDA contains a specific provision granting the FDA the authority to impose such requirements, and the FDA affirmatively chose not to impose a reproductive toxicity warning requirement. *See* 21 U.S.C. § 360h. Given the FDA's authority to impose such a requirement, its decision was an exercise of that authority. Proposition 65 imposes a warning requirement which is different from the FDA's decision.

Second, the MDA also contains a specific requirement that medical devices, including dental mercury, bear adequate directions for use and adequate warnings. *See* 21 U.S.C. § 352(f). For prescription devices, the FDA has imposed specific requirements for an exemption from § 352(f), which includes a re-

quirement that labelling bear information regarding "any relevant hazards, contraindications, side effects, and precautions." Information regarding reproductive hazards would fall within this type of information. The parties do not dispute that dental mercury is a prescription device. The regulations state that prescription devices are "not safe except under supervision of a practitioner," such as a dentist. *See* 21 C.F.R. § 801.109. The regulation states that "adequate directions for use" *cannot* be prepared for such a device. As a result, devices such as dental mercury, must either comply with the specific warning provisions of 21 C.F.R. § 801.109 or violate § 352(f). Proposition 65 imposes a warning requirement in addition to these requirements.

■ Defendants contend that these provisions are not "specific requirements" applicable to dental mercury, as they fall within the general controls applicable to all medical devices. Defendants point to several examples of warning requirements which apply only to one specific device. *See, e.g.,* 21 C.F.R. § 801.403; *see also* ELF's Motion, Exh. A. Defendants argue that § 808.1(d) contemplates this degree of specificity before it will preempt. Defendants read § 808.1(d) too narrowly. Section 808.1(d) does not state that the MDA preempts state law only when it contains a requirement specifically applicable to one specific device. A "specific requirement" may apply to numerous medical devices and still be preemptive. *See Stamps v. Collagen Corp.,* 984 F.2d 1416, 1421 (5th Cir.) (premarket approval procedure, applicable to all Class III devices, preempts state tort claims for defective design, inadequate warning and negligent failure to warn), *cert. denied,* —— U.S. ——, 114 S.Ct. 86, 126 L.Ed.2d 54 (1993); *see also King v. Collagen Corp.,* 983 F.2d 1130, 1134–35 (1st Cir.1993) (approval of device's labelling and packaging during Class III premarket approval process preempts state tort claims), *cert. denied,* —— U.S. ——, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993).

At the heart of this dispute is the fact that dental mercury, as a Class I device, is sub-

---

7. In this section, the court will use "defendants" to mean defendants and intervenor defendants.

ject only to the requirements stated in the general controls and their attendant regulations. Neither party has cited a preemption case involving a Class I device, and the court has found none. Therefore, it appears that there is no authority directly on point. Defendants argue that if the general controls regulating a Class I device can be preemptive, "[t]he mere act of designating an item as a medical device would automatically deprive the states of all regulatory power over" that item. As a result, the argument goes, there would be no need for the word "specific" in § 360k(a) and § 808.1(d).

It is not dispositive that dental mercury is only a Class I device or that this court will be the first to find preemption in a case involving a Class I device. Since all medical devices are subject to the general controls, the court is just as persuaded by cases analyzing the preemptive effect of general controls on Class II or Class III devices. It appears to the court that the parties have cited only two published cases addressing the preemptive effect of general controls, and both cases found preemption. *See Mendes v. Medtronic,* 18 F.3d 13 (1st Cir.1994) (§ 801.109 preempts state tort claim based on manufacturer's failure to warn of pacemaker's latent defects); *Hunsaker v. Surgidev Corp.,* 818 F.Supp. 744 (M.D.Penn.1992) (§ 360h preempts state tort claim based on manufacturer's failure to notify of defects), *aff'd,* 5 F.3d 1489 (3d Cir.1993).

Therefore, for the reasons stated here and in *Mendes* and *Hunsaker,* the court hereby finds that Proposition 65's warning requirements, when imposed on dental mercury or products containing dental mercury, are different from, or in addition to, specific MDA requirements applicable to dental mercury or products containing dental mercury, and consequently are preempted.

## B.  Requirement of General Applicability

■ Alternatively, defendants argue that Proposition 65 is merely a state requirement of "general applicability" that "affects" devices but is not a "requirement applicable to

a device" within the meaning of the MDA. *See* 21 C.F.R. § 808.1(d)(1). The court rejects the notion that Proposition 65 is akin to electrical codes or the Uniform Commercial Code. A state warning requirement relating to the safe use of chemicals is more akin to a state tort law relating to the safety of products and their use, *see Needham v. Int'l Playtex, Inc.,* 1989 WL 8812, 1989 U.S.Dist. LEXIS 800 (E.D.Ky.1989), than it is to general codes which relate to the safety of public space or to the legal rights of consumers.

## IV.  Commerce Clause

■ Plaintiffs claim that Proposition 65 violates the Commerce Clause. To determine whether a state statute violates the Commerce Clause, a court must examine "whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits." *Brown–Forman Distillers v. New York,* 476 U.S. 573, 579, 106 S.Ct. 2080, 2084, 90 L.Ed.2d 552 (1986). A court may properly strike down a state statute if its purpose is to disfavor interstate commerce, if its benefits are illusory or insignificant, or if the particular means chosen to achieve its goals are "irrational, arbitrary or unrelated to those goals." *Alaska Airlines, Inc. v. City of Long Beach,* 951 F.2d 977, 984 (9th Cir.1991).

■ Plaintiffs' motion for summary judgment on this claim fails for two reasons. First, plaintiffs' have not submitted sufficient evidence for this court to rule, as a matter of law, that Proposition 65 places an unconstitutional burden on interstate commerce. Second, this issue is riddled with genuine issues of material fact. For instance, ELF argues that plaintiffs' claim that compliance with Proposition 65 is unduly burdensome lacks credibility in light of a recent voluntary settlement agreement in *Environmental Law Foundation v. Jeneric/Pentron,* San Francisco Superior Court No. 957039 (Dec. 13, 1993). However, John C. Miles, president of plaintiff Dentsply Int'l, Inc., and Gordon Cohen, president of Jeneric/Pentron, have submitted declarations stating that compliance with

**1286**

Proposition 65 is so burdensome that they may have to relocate their businesses to another state. *See* Miles Decl.; Moran Decl., Exh. 4. Cohen states that Jeneric/Pentron was forced to settle with ELF.

Based on *Brown–Forman, Alaska Airlines,* and the evidence submitted, the court cannot now say, as a matter of law, that Proposition 65 does or does not violate the Commerce Clause. Therefore, plaintiffs' motion for summary judgment on their Commerce Clause claim is DENIED, without prejudice.

## V. Conclusion

For the foregoing reasons, the court hereby orders that:

1. Plaintiffs' motion for summary judgment on its declaratory and injunctive relief claims based on preemption is GRANTED;

2. Plaintiffs' motion for summary judgment on its declaratory relief claim based on a violation of the Commerce Clause is DENIED;

3. Defendants' motion to dismiss, or in the alternative, for summary judgment, is DENIED;

4. Intervenor defendant's motion to dismiss, or in the alternative, for summary judgment, is DENIED;

5. Defendants' motions to strike and for additional discovery are DENIED.

IT IS SO ORDERED.