Catherine F. STANLEY

v.

SCHIAVI MOBILE HOMES, INC.

v.

MARLETTE HOMES, INC.

Supreme Judicial Court of Maine.

Argued Nov. 16, 1982.

Decided July 1, 1983.

Berman, Simmons, Laskoff & Goldberg, P.A., William D. Robitzek (orally), Gary Goldberg, Lewiston, for plaintiff.

Norman & Hanson, Peter J. DeTroy (orally), Portland, for Schiavi Mobile Homes.

Petruccelli, Cohen, Erler & Cox, Joel C. Martin (orally), John Paul Erler, Portland, for Marlette Homes.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS, CARTER and WATHEN, JJ.

ROBERTS, Justice.

Following a jury trial, Catherine F. Stanley appeals from a judgment of the Superior Court, Kennebec County, entered against her claim for damages resulting from a fall in a mobile home manufactured by Marlette Homes, Inc. and displayed for sale at Schiavi Mobile Homes, Inc., of Augusta. Stanley objects to (1) the pretrial dismissal of the breach of warranty and strict liability counts in her complaint, (2) the admission of evidence of the non-occurrence of similar falls, and (3) the alleged errors in the jury instructions. We affirm the judgment of the Superior Court.

Catherine F. Stanley, the plaintiff, went shopping for a new mobile home at Schiavi Mobile Homes. A mobile home manufactured by Marlette Homes was on display and open to the public. The living room floor in this particular mobile home was elevated approximately three inches higher than the adjacent floor. A three-foot-high wrought iron railing divided the living room from the rest of the mobile home. The floor plan, Appendix A, indicates where the railing was located in the mobile home. The railing had a four-foot-wide opening which permitted people to enter the living room. On both sides of the four-foot opening, decorative wrought iron upright posts rose from the top of the step to the ceiling, as shown in the photograph, Appendix B. The floor leading to the step, the step, and the living room floor were covered with identical carpeting. The plaintiff tripped over this step, injuring her left shoulder and her left leg.

Stanley's original complaint against Schiavi alleged negligence as well as breach of implied contract and implied warranty. Later, Stanley amended her complaint to include a claim of strict liability against Schiavi. In a third-party complaint, Schiavi asserted a claim for indemnification and contribution against Marlette. Marlette subsequently filed a cross-claim against Schiavi for contribution. The plaintiff filed a cross-claim against Marlette, alleging negligence and strict liability.[1]

██ On the morning of trial, the court dismissed the contract, warranty, and strict liability claims and permitted Stanley to proceed against the defendants only on the negligence theory. The presiding justice received little assistance from counsel in making these rulings.[2] His reasons are not clearly articulated in some respects. The court was in error if, as Stanley claims, it ruled that she could proceed on only one theory of liability. We must review separately, however, the claims dismissed as to each defendant.

I.

### A. Claims Against Schiavi

██ When considering a motion to dismiss under M.R.Civ.P. 12(b)(6), all well-

---

1. The proper procedure would have been to amend the complaint to include Marlette. *See* *S.H. Nevers Corp. v. Husky Hydraulics, Inc.,* 408 A.2d 676, 679 (Me.1979).

2. By pretrial order the parties had been instructed to brief the issues raised by the defendants' motions to dismiss. No one complied. We vigorously condemn this disregard of a pretrial order by both sides which is tantamount to waiving objection to any ruling the trial court might make.

pleaded material allegations are admitted, *Beckett v. Roderick,* 251 A.2d 427, 430 (Me. 1969), and construed in favor of the pleader. *Dom J. Moreau & Son v. Federal Pacific Electric Co.,* 378 A.2d 151, 152 (Me.1977). A complaint is sufficient to withstand a 12(b)(6) motion to dismiss if it avers facts which would entitle a plaintiff to relief upon some theory or if it asserts every necessary element of a claim. 378 A.2d at 153.

■ Both the warranty claim and the strict liability claim against Schiavi must fail for the simple reason that the complaint did not allege facts sufficient to establish Schiavi's status as seller of the mobile home in question.[3] The pleaded facts asserted that the plaintiff was in the mobile home as a business invitee. The complaint in this case did not indicate that any sale by Schiavi ever occurred.[4] Because no sale occurred, Schiavi did not impliedly warrant to the plaintiff that the mobile home was merchantable or fit for its particular purpose. *See* 11 M.R.S.A. §§ 2–314 to –315 (1964).[5] The plaintiff, therefore, could not recover against Schiavi under the breach of implied warranty theory.

■ Similarly, the dismissal of the strict liability claim against Schiavi was correct. The strict liability statute, 14 M.R.S.A. § 221 (1980)[6] provides in part that "[o]ne who sells any goods or products in a defective condition unreasonably dangerous to the user or consumer ... is subject to liability for physical harm thereby caused to a person...." Schiavi did not sell the prod-

3. Although the court also dismissed the claim based on implied contract, Stanley does not complain of that dismissal. We, therefore, treat the issue as waived on appeal.

4. The only sale that occurred was between Marlette and Schiavi. Because lack of privity is no defense in breach of implied warranty actions, *see* 11 M.R.S.A. § 2–318 (Supp. 1982–1983), the plaintiff could maintain such an action against Marlette. The plaintiff, however, never made a breach of warranty claim against Marlette.

5. Section 2–314 provides:

(1) Unless excluded or modified by section 2–316, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

(2) Goods to be merchantable must at least be such as

(a) Pass without objection in the trade under the contract description; and

(b) In the case of fungible goods, are of fair average quality within the description; and

(c) Are fit for the ordinary purposes for which such goods are used; and

(d) Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(e) Are adequately contained, packaged and labeled as the agreement may require; and

(f) Conform to the promises or affirmations of fact made on the container or label if any.

(3) Unless excluded or modified by section 2–316, other implied warranties may arise from course of dealing or usage of trade. Section 2–315 provides:

Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is, unless excluded or modified under section 2–316, an implied warranty that the goods shall be fit for such purpose.

6. Section 221 provides in full:

One who sells any goods or products in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to a person whom the manufacturer, seller or supplier might reasonably have expected to use, consume or be affected by the goods, or to his property, if the seller is engaged in the business of selling such a product and it is expected to and does reach the user or consumer without significant change in the condition in which it is sold. This section applies although the seller has exercised all possible care in the preparation and sale of his product and the user or consumer has not bought the product from or entered into any contractual relation with the seller.

uct in question, defective or otherwise, and thus lacked the status of "one who sells."[7]

### B. *Strict Liability Claim Against Marlette*

■ Section 221 would apply to Marlette since it is alleged to have manufactured and sold a product in a defective condition to Schiavi. The statute permits recovery by injured persons who have not purchased the product or have not entered into any contractual relation with the seller. Although the dismissal of the strict liability claim against Marlette was error, Marlette argues that the error was harmless because negligence and strict liability theories when applied to design defect cases are essentially the same. According to the defendant, all the elements of the strict liability claim were presented to the jury.[8]

Currently, there is a split of opinion as to whether a distinction exists between negligence and strict liability theories of recovery when applied to cases based upon design defects. Some courts have stated that in actions involving design defects the theories are essentially the same. *See Garrison v. Rohm & Haas Co.,* 492 F.2d 346, 351 (6th Cir.1974); *Balido v. Improved Machinery, Inc.,* 29 Cal.App.3d 633, 639, 105 Cal.Rptr. 890, 895 (1973); *Jones v. Hutchinson Manufacturing Co.,* 502 S.W.2d 66, 69–70 (Ky. 1973). Distinguishing negligence actions, other courts state that strict liability is imposed regardless of the manufacturer's exercise of reasonable care. *Hoppe v. Midwest Conveyor Co.,* 485 F.2d 1196, 1199 (8th Cir.1973); *Beshada v. Johns-Manville Products Corp.,* 90 N.J. 191, 199, 447 A.2d 539, 544 (1982); *Roach v. Kononen,* 269 Or. 457, 464, 525 P.2d 125, 129 (1974); *Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d 743, 749 (Tex.1980); *see also Haugen v. Minnesota Mining and Manufacturing Co.,* 15 Wash. App. 379, 387–88, 550 P.2d 71, 76 (1976). Without addressing this conflict of opinion, we hold that under the facts of this case

any error in dismissing the strict liability count against Marlette was harmless. M.R. Civ.P. 61.

■ In actions based upon defects in design, negligence and strict liability theories overlap in that under both theories the plaintiff must prove that the product was defectively designed thereby exposing the user to an unreasonable risk of harm. *See* Phillips, *A Synopsis of Developing Law of Products Liability,* 28 Drake L.Rev. 317, 322 (1978); *compare Restatement (Second) of Torts* § 398, at —— (1965) (chattel made under dangerous design) *with* 14 M.R.S.A. § 221 (plaintiff must prove element that product was in defective condition unreasonably dangerous). Such proof will involve an examination of the utility of its design, the risk of the design and the feasibility of safer alternatives. *Boatland of Houston,* 609 S.W.2d at 749. The specific design of which Stanley complains serves only an aesthetic purpose. The design presents the risk of not perceiving the step to which the user is exposed. Avoidance of the risk involves either eliminating the step design or installing a carpet with contrasting colors or patterns. Neither solution involves a loss of utility, marketability, or production that warrants exposing users to the risk of harm. It follows, therefore, that when the jury decided Marlette was not at all negligent, it of necessity found that the design created no unusual risk of harm to the user. That finding has rational support in the evidence. We hold, therefore, under the facts of this case and upon a jury finding of no negligence, any error in the dismissal of the strict liability claim was harmless.

■ Moreover, even if we were to find a distinction between the two theories, upon the particular facts of this case, the jury instructions as to the claim against Marlette were consistent with a strict liability

---

7. We do not imply that the status of seller cannot arise prior to the consummation of a sale or transfer of title. We hold only that, on the facts as alleged in this case, Schiavi had not become a seller of the mobile home.

8. At oral argument, Stanley stated that no additional evidence would have been introduced to support the strict liability claim.

theory. The court charged the jury that a manufacturer who designs a product that is dangerous for use is liable for the physical harm caused by its failure to exercise reasonable care. The court, therefore, instructed the jury that a manufacturer of a dangerously designed product which causes physical harm is negligent. In contrast with those instructions are the instructions as to the negligence claim against Schiavi in which the court discussed the necessity of showing Schiavi's knowledge or constructive knowledge. The court made no mention of Marlette's knowledge or constructive knowledge of that danger. See Hoppe, 485 F.2d at 1199; Haugen, 15 Wash.App. at 387–88, 550 P.2d at 76; see also Robbins v. Farmer's Union Grain Terminal Ass'n, 552 F.2d 788, 794–95 n. 15 (8th Cir.1977) (knowledge element not part of strict liability action). Under these circumstances, any error was indeed harmless.

## II.

On appeal, Stanley asserts that the trial justice improperly admitted evidence of the nonoccurrence of similar accidents. During the trial, Schiavi attempted to establish that there had never been any similar accidents. The parties stipulated that the condition of the mobile home had not been altered between the date of manufacture and the date of trial. One of Schiavi's employees testified that it was common practice both in the mobile home industry and at Schiavi's to permit people to browse through the homes. In addition, he stated that between the time the mobile home in question arrived on the lot in September of 1977 and the time the accident occurred in November of 1977, a "couple of dozen" people went through the home. Finally, according to the employee, from September of 1977 to May of 1978, when the home was sold, a "couple of hundred people" had been through the home. When the defendant asked whether anyone else had stumbled over the rise, Stanley objected. The court overruled the objection and the witness answered no.

The plaintiff's assertion that the defendant failed to lay a sufficient foundation is erroneous. In Payson v. Bombardier, Ltd., 435 A.2d 411, 413 (Me.1981), this Court held that evidence of absence of similar accidents is relevant on the issues of defective condition, notice, or causation as long as the foundational requirement of substantial similarity of conditions or of an adequate number of situations are met. See also Simon v. Town of Kennebunkport, 417 A.2d 982, 984–86 (Me.1980) (discussing other-accident evidence). In this case, the parties stipulated that the condition of the trailer had not changed since the plaintiff's accident. Schiavi's employee testified that a couple of hundred people had been through the trailer in question and that none of these people had tripped over the step. Consequently, prior to admitting the evidence, a sufficient foundation had been laid.

## III.

Finally, Stanley complains of several errors in the trial court's instructions to the jury. We find it necessary to comment on only two of her objections. Both of these errors were preserved for appellate review. First, Stanley argues that the jury was misled by an explanation of "proximate cause" which she claims implied that "proximate" means sole cause and that the causal connection could be broken off by an intervening cause. Although the questioned instruction may have been inartful, the instruction, viewed in its entirety, was not erroneous. See Towle v. Aube, 310 A.2d 259, 266 (Me.1973); Welch v. Jordan, 159 Me. 436, 445, 194 A.2d 841, 845 (1963). The jury was fully instructed upon the principles of comparative negligence. In the circumstances of this case, we cannot believe that the jury was misled that "proximate" meant "sole" or that Stanley's conduct could constitute an "intervening cause."

In addition, Stanley complains that the court instructed in terms of "intended use" rather than "foreseeable use" and "foreseeable misuse." Her contention

is without merit. The court need not instruct upon matters not presented by the evidence. *See Schneider v. Richardson,* 438 A.2d 896, 897 (Me.1981); *Michaud v. Steckino,* 390 A.2d 524, 534 (Me.1978); *Towle,* 310 A.2d at 266. There is no evidence in this case that the defendants' trailer was being used in any way other than for its "intended" use. As we construe the concept of "foreseeable misuse," it is not intended as a justification or condonation of a plaintiff's possible contributory negligence. *See Orr v. First National Stores, Inc.,* 280 A.2d 785, 792 (Me.1971).

The entry is:

Judgment affirmed.

All concurring.