**Jeannette J. ST. GERMAIN**

v.

**HUSQVARNA CORPORATION.**

Supreme Judicial Court of Maine.

Argued March 17, 1988.
Decided July 29, 1988.

Jonathan W. Sprague, Stevens, Engels, Bishop & Sprague, Presque Isle, Rudolph T. Pelletier (orally), Madawaska, for plaintiff.

E. Allen Hunter (orally), Solman, Page & Hunter, P.A., Caribou, for defendant.

Before McKUSICK, C.J., and NICHOLS,* WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

SCOLNIK, Justice.

In this products liability case, Jeannette St. Germain appeals from a judgment entered for the defendant, Husqvarna Corporation, by the Superior Court (Aroostook County), following a jury trial. St. Germain contends that the trial court erred in granting a directed verdict in favor of the defendant on the issue of strict liability. We agree, but finding the error harmless, we affirm the judgment.

On August 1, 1979, Ronald St. Germain, the plaintiff's deceased husband, drove his skidder on a logging trail near Eagle Lake to an area where he was cutting pulp wood. On the way, he encountered a tree blocking the trail and attempted to push it out of the way with the skidder. When this was unsuccessful he jumped down from the skidder and started to cut the tree with his Husqvarna Model 65 chain saw. The tree was under tension and when the cut was almost complete, either the chain saw kicked back or the tree sprang back causing the chain saw to hit the decedent. The saw blade cut through the decedent's chest, striking his heart, and he died within approximately ten minutes.

---

* Nichols, J., sat at oral argument but retired before this opinion was certified.

1. A chain brake is a device that is part of, or attached to, a chain saw, which stops the chain's

The plaintiff filed this wrongful death action against the defendant manufacturer of the chain saw on March 11, 1981. The complaint alleged that the defendant was liable on theories of negligence, strict liability and breach of warranty. The plaintiff abandoned the breach of warranty claim and does not address it on appeal. Her negligence and strict liability claims essentially follow the same argument: that the chain saw used by the decedent was designed and manufactured without a "chain brake," which would have prevented the decedent's accident from being fatal.[1]

At the close of the evidence, the defendant moved for a directed verdict on both the negligence and strict liability counts. The presiding justice denied defendant's motion as to negligence, but granted it as to strict liability on the ground that there was no evidence to establish that the chain saw was defective and unreasonably dangerous. A unanimous jury returned a verdict in defendant's favor and judgment was entered accordingly. The plaintiff appeals, claiming that the Superior Court erred in granting a directed verdict on the strict liability count.

"In reviewing a directed verdict, we consider the evidence, including every justifiable inference therefrom, in the light most favorable to the party against whom the verdict is directed. If by any reasonable view of this evidence a jury verdict for the plaintiff could be sustained, the granting of a directed verdict is improper." *Baker v. Mid Maine Medical Center*, 499 A.2d 464, 466 (Me.1985) (citations omitted). Although we find from the evidence presented at trial that the Superior Court erred in granting a directed verdict on the strict liability issue, we conclude the error was harmless.

Strict liability in Maine is governed by 14 M.R.S.A. § 221 (1980), which reads in its entirety as follows:

motion in certain situations when the operator loses control of the saw and is in danger of injury.

One who sells any goods or products in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to a person whom the manufacturer, seller or supplier might reasonably have expected to use, consume or be affected by the goods, or his property, if the seller is engaged in the business of selling such a product and it is expected to and does reach the user or consumer without significant change in the condition in which it is sold. This section applies although the seller has exercised all possible care in the preparation and sale of his product and the user or consumer has not bought the product from or entered into any contractual relation with the seller.

The presiding justice directed the verdict on the strict liability issue on the ground that insufficient evidence existed for the jury to find that the chain saw was defective and unreasonably dangerous.[2] Whether the court's decision was correct turns on the applicable definition of "defective condition unreasonably dangerous." 14 M.R. S.A. § 221.

The terms "design defect" and "unreasonably dangerous" have been given widely varying meanings in different jurisdictions. *See* W. Prosser and W. Keeton, *The Law of Torts*, § 99 at 698 (5th ed. 1984); Frumer and M. Friedman, 2 *Products Liability*, § 303 [4][f][iv] at 3–598 (1987); R. Hursh and H. Bailey, 1 *American Law of Products Liability*, § 4:12 at 670 (2d ed. 1974). These different definitions generally fall within two approaches that have been utilized in evaluating design defect cases: (1) the "danger utility test," which weighs the utility of the product against the danger it presents, and (2) the "consumer contemplation test," under which a product is defectively dangerous if it is dangerous to an extent beyond the contemplation of the ordinary consumer. Prosser, *supra*, § 99 at 698–700. In *Stanley v. Schiavi Mobile Homes, Inc.*, 462 A.2d 1144 (Me.1983), we indicated that Maine follows a "danger utility test." We stated:

> In actions based upon defects in design, negligence and strict liability theories overlap in that under both theories the plaintiff must prove that the product was defectively designed thereby exposing the user to an unreasonable risk of harm. Such proof will involve an examination of the utility of its design, the risk of the design and the feasibility of safer alternatives.

*Stanley*, 462 A.2d at 1148 (citations omitted).

In the present case, sufficient evidence was presented to establish that the product was in a defective condition unreasonably dangerous to the user. The jury heard testimony that chain saws designed with chain brakes have a utility in protecting the user from potential injury. On the other hand, testimony was presented that saws without chain brakes may also implicate a utility interest because the brake can interfere with the function of the saw, can present maintenance problems, and can sometimes react too slowly to protect the operator. The jury further heard that chain saws designed without chain brakes present a risk of not protecting the user against avoidable injury, and that the risk could have been reduced in the instant case by the defendant's design and manufacture of a saw that incorporated a chain brake. Finally, there was testimony that chain brake technology was available at the time the decedent's chain saw was manufactured, that the cost of a chain brake would run from $7.50 to $30.00, and that the

---

**2.** The court made no mention of the other elements of strict liability identified in 14 M.R.S.A. § 221. The record supports an assumption that the court found these elements were adequately supported by the evidence: the defendant is the seller/manufacturer of the chain saw in question; the decedent was physically harmed by the chain saw; the decedent was a person the defendant might reasonably have expected to use and be affected by the chain saw; and the chain saw reached the decedent without any significant change in the condition in which it was sold.

safety feature would minimally impair the use of the saw. In light of this evidence, the trial court erred in directing a verdict in favor of the defendant, since a jury could have concluded, under the "danger utility test," that the Husqvarna Model 65 chain saw was defective and unreasonably dangerous because its utility without a chain brake did not outweigh the risk of harm it posed for its users. *See Stanley*, 462 A.2d at 1148.

 Even though the trial court erred in granting a directed verdict for the defendant, the error was harmless.[3] In its instructions to the jury, the court set forth the exact same "danger utility test" for negligence that it would have laid out for a strict liability count. At no time did the plaintiff challenge the correctness of this instruction. In response to the court's instructions, the jury returned a special verdict finding that the defendant was not negligent in its design or manufacture of the chain saw in question. Accordingly, right or wrong, the instruction furnishes the answer that the jury would have arrived at with a similar instruction on a strict liability count. In these circumstances, we conclude that the submission of the strict liability count to the jury would not have resulted in a different verdict and it is therefore "highly probable" that the court's error in directing a verdict on the strict liability count did not affect the judgment. *See State v. True*, 438 A.2d 460, 467 (Me.1981).

The entry is:

Judgment affirmed.

McKUSICK, C.J., and WATHEN, J. concurring.

GLASSMAN, Justice, with whom CLIFFORD, Justice, joins, dissenting.

I must respectfully dissent. Because fault in the sense of negligence by the

defendant in the design of the chain saw is not a prerequisite to the plaintiff's recovery under 14 M.R.S.A. § 221, I would vacate the judgment and remand this case to the Superior Court for a new trial on the strict liability count of the plaintiff's complaint. *See Austin v. Raybestos–Manhattan, Inc.*, 471 A.2d 280, 282, 285 (Me.1984).

Here, the court recognizes that the plaintiff presented sufficient evidence to establish that the product was in a defective condition, unreasonably dangerous to the user because the utility of the chain saw without a brake did not outweigh the risk of harm to its users. The court nonetheless holds that because of the jury's finding that the defendant was not *negligent* in the design of the chain saw, that finding obviates any possible legal responsibility on the part of the defendant.

The danger utility test is not based on the presence or absence of due care of a defendant but on the danger-in-fact of a particular feature of the product as weighed against its utility. It is the product itself, and not the defendant's conduct, that is evaluated to determine whether the defendant will be held strictly liable for the injuries proximately caused by the reasonable use of the product. "Under this test, a product can be said to be defective in the kind of way that makes it unreasonably dangerous if a reasonable person would conclude that the danger-in-fact, *whether foreseeable or not*, outweighs the utility of the product." W. Prosser & W. Keeton, *The Law of Torts*, § 99 at 699 (5th ed. 1984) (emphasis added) (hereinafter *Law of Torts*). In the design utility test for strict liability it is irrelevant that a risk or hazard related to the use of the product as designed was not discoverable under existing technology and in the exercise of utmost care [1] or that the defendant may have overevaluated the benefits of the product as designed. "[T]he benefits relevant to the

---

**3.** We again remind the Superior Court of the policy favoring the submission of issues to the jury in close cases. *See Poirier v. Hayes,* 466 A.2d 1261, 1264 (Me.1983).

**1.** In *Bernier v. Raymark, Inc.,* 516 A.2d 534, 537–40 (Me.1986), we discussed the admissibility of state-of-the-art evidence when the product defect alleged is a failure to warn *of a dangerous ingredient in a product.* Implicit in a claim

utility of the product are those that are *actually* found to flow from the use of the product as designed rather than as perceived at the time the product was designed and marketed." *Id.* at 700 (emphasis added).

Contrary to the holding of the court, the trial court not only did not, but could not, "set forth the exact same 'danger utility test' for negligence that it would have laid out for a strict liability count." *Supra* p. 1286. Here, a fair reading of the trial court's instructions makes clear that the instructions in their entirety properly were directed to the duty of care owed by the manufacturer of a product and those factors for consideration by the jury in determining whether the defendant had breached that duty.[2] The plaintiff's claim of strict liability against the defendant-manufacturer of the chain saw does not rest on any duty of care owed by the manufacturer to the user of that product. It rests on a policy decision made by the Legislature when it enacted section 221 in 1973[3] that the existence of fault or negligence in the manufacture or sale of a dangerously defective product should no longer be required as a prerequisite to imposing liability on the manufacturer or seller for the costs of accidental injuries caused by the product. *See gener-*

*ally Restatement (Second) of Torts* (1965) comments to § 402A; *Law of Torts* § 98 at 692, 693; 3 Legis.Rec. 3897 (1973).

With its focus on the *product* manufactured and sold and not on the *conduct* of the manufacturer and seller, to allow recovery by the plaintiff the factfinder must determine 1) if the product as it existed at the time of the accident was dangerous in fact,[4] and 2) if so, did that danger outweigh the benefits that in fact flowed from the use of the product as designed?[5]

I am aware of our decision in *Stanley v. Schiavi Mobile Homes, Inc.,* 462 A.2d 1144 (Me.1983), in which we expressly stated that the court "was not addressing" the issue of strict liability imposed regardless of the manufacturer's exercise of reasonable care in the design of a product. *Id.* at 1148. Notwithstanding some ambiguity of the language, I find no conflict in our holding confined to *"the particular facts* in [that] case," *id.* at 1148 (emphasis added), and our interpretation of section 221 set forth in *Austin v. Raybestos–Manhattan, Inc.,* 471 A.2d 280, 282 (Me.1984), that "[u]nder [section 221] a plaintiff may recover for injuries resulting from an unreasonably dangerous, defective product without having to prove negligence on the part of the defendant in preparing or selling the

based on that theory is the element of negligence, i.e., that the manufacturer *knew* or *should have known* in the exercise of ordinary care of the risk or hazard and failed to warn. In such case, unlike here, the state of the art is relevant to the issue presented to the factfinder.

2. The plaintiff's failure to challenge the correctness of the instruction is irrelevant. The instructions given properly set forth the law of negligence which was the only theory for the potential liability of the defendant allowed to go to the jury.

3. 14 M.R.S.A. § 221 is an almost verbatim recitation of section 402A of the *Restatement (Second) of Torts* (1965). Among the policy reasons that led the American Law Institute to adopt section 402A were that the consumer of products forced to rely on the manufacturer and sellers of those products are entitled to maximum protection at the hands of someone; that the cost of damaging events due to defectively dangerous products can best be borne by the manufacturers and sellers of those products;

the expectation that imposition of liability without fault would deter accidents caused by defective products; and a recognition that if fault or negligence of the manufacturer or seller were the only justification for imposing liability on them for costs of accidents due to defective products, it would place a costly and often difficult burden of proof on the injured consumer. With the adoption of a tort theory the imposition of strict liability for a dangerous defective product on a contract theory based on breach of implied promises has been abandoned. *See* comments to § 402A and *Law of Torts* § 98.

4. Section 221 requires that there not be a significant change in the condition of the product from the date of sale.

5. *See Austin v. Raybestos–Manhattan Inc.,* 471 A.2d at 287, 288 for a full discussion of the applicability of 14 M.R.S.A. § 156 (1980) to a plaintiff's claim based on section 221.

product." Clearly the statute makes no distinction between the product in a "defective condition unreasonably dangerous to the user" by reason of its design and a product that is in a "defective condition unreasonably dangerous to the user" by reason of its assembly, container, or packaging.

In the instant case we are squarely presented with the issue we determined not to address in *Stanley*. In my opinion, the language of section 221 clearly requires that when the product defect claimed is the defective design of that product, the plaintiff may recover for injuries resulting from its use without having to prove negligence of the defendant in the conception of that design or in the reduction of that design conception to the concrete form of a saleable product.

Accordingly, I would hold that the trial court not only erred in granting a directed verdict for the defendant on the strict liability issue, but that the error was not rendered harmless by the court's instructions, and would remand the case for a new trial on that issue.