RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0164p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

———————

MARK D. LEE,

*Plaintiff-Appellant,*

v.

SMITH & WESSON CORPORATION,

*Defendant-Appellee.*

No. 13-3597

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:11-cv-01940—Dan A. Polster, District Judge.

Decided and Filed:  July 29, 2014

Before: KEITH, SILER, and ROGERS, Circuit Judges.

———————

**COUNSEL**

**ON BRIEF:**  Brittany L. Lee, New Orleans, Louisiana, for Appellant.  Clem C. Trischler, PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP, Pittsburgh, Pennsylvania, for Appellee.

ROGERS, J., delivered the opinion of the court, in which SILER, J., joined.  KEITH, J. (pp. 8–10), delivered a separate dissenting opinion.

———————

**OPINION**

———————

ROGERS, Circuit Judge.  Plaintiff Mark Lee was injured while shooting a revolver made by defendant Smith & Wesson Corp.  In this product liability suit alleging a defect in the firearm, the only expert evidence regarding how a defect in the firearm could have caused the injury was excluded because the expert's theory was not consistent with aspects of plaintiff's own memory

1

of what happened.  The district court accordingly found the evidence inadmissible.  Reserving the right to challenge that evidentiary decision, plaintiffs Mark and Cynthia Lee stipulated to dismissal of their suit and Mark Lee now appeals.  Because the cause of Lee's injury is the fact at issue in this product-liability case, and notwithstanding that aspects of Lee's memory contradict his own expert's theory, the expert testimony was not properly excluded.  The judgment must therefore be reversed and the case remanded for further proceedings.

In November 2006, plaintiff Lee was injured in an accident while target shooting with his 460XVR revolver, which was designed, manufactured, and distributed by defendant Smith & Wesson.  After successfully firing the gun twice, Lee took a third shot, and the gun discharged improperly, seriously injuring Lee's right eye, face, and nose.  According to plaintiff, the gun cylinder swung open and caused the blast from the shot to knock off Lee's safety glasses and damage his right eye, leading to loss of vision and significant eye pain.

Lee and his wife, Cynthia Lee, sued Smith & Wesson in Ohio state court, under the Ohio Product Liability Act, alleging that he sustained permanent injuries from the shooting accident.  The Lees alternatively claimed that the revolver was defective in manufacture, in design, in lacking adequate warnings, and in not conforming to representations made by Smith & Wesson.  Smith & Wesson claimed that Lee's injuries were caused by recoil.  Smith & Wesson removed the suit to the federal court below based on diversity jurisdiction.

In support of his claims, Lee sought to introduce the expert testimony of mechanical engineer Roy Ruel.  After examining Lee's revolver and reviewing all relevant material, Ruel concluded that Lee's accident was the result of the revolver's firing without its cylinder fully closed and locked, a condition that caused hot high pressure gas to be expelled from the revolver when fired, striking Lee in the face and causing his injuries.  Ruel determined that the revolver was defective in both design and manufacture because it could be cocked and fired with a pull of the trigger without its cylinder closed and locked, and also because its ejector rod could become loose, which would prevent its cylinder from closing and locking due to mechanical interference.  Ruel also concluded that Smith & Wesson failed to provide adequate warnings about this condition.  Ruel explained:

When Mr. Lee attempted to fire his gun for the third shot, the cylinder failed to fully close and the gun would not fire. Not understanding the problem and as the cylinder appeared to be closed, Mr. Lee pushed on the thumb latch and in so doing was able to cock and fire the gun with the result experienced.

The fact that the . . . gun's cylinder was not closed and locked was evidenced by its cylinder falling open after Mr. Lee's accident. That chamber pressure exceeded design was evidenced by the spent case being difficult to remove and had to be pried out after Mr. Lee's accident.

When the incident S&W 460 was examined by the author on March 11, 2011 the author determined Mr. Lee's S&W 460 revolver could be cocked ready to fire by a pull of the trigger without its cylinder being fully closed. Thus, as noted above, although Mr. Lee's S&W 460 cylinder was not fully closed or locked it could still be fired by a pull of the trigger.

In addition the author determined that Mr. Lee's S&W 460 revolver's ejector rod although screwed in place was not secure and could easily be loosened by fingers alone. . . . [The ejector rod had become loose on Lee's revolver prior to the accident.]

When the S&W 460's ejector rod loosened, it initially caused the cylinder and yoke to bind making closing of the cylinder difficult and then prevented it from fully closing and locking. This is what occurred and was the cause of Mr. Lee's accident.

R. 50-7, at 3–4, PageID # 1353–54.

Smith & Wesson moved to exclude Ruel's expert testimony because, among other reasons, Ruel's testimony failed to satisfy the Federal Rule of Evidence 702's relevancy requirement because of inconsistencies between Ruel's reconstruction of the incident and Lee's testimony. The district court granted Smith & Wesson's motion in limine on the grounds that Ruel's testimony failed to satisfy the relevancy requirement set out in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny, codified in Rule 702 of the Federal Rules of Evidence. The district court based its opinion on the following alleged inconsistencies between Lee's deposition testimony and Ruel's expert opinion: (1) Lee testified that he had no difficulty firing the gun the third time, whereas Ruel stated that the gun did not immediately fire because the cylinder failed to close fully; (2) Lee testified that the cylinder was closed when he fired the gun, whereas Ruel stated that it was open but appeared to be closed; and (3) Lee's demonstration of his grip on the gun showed that he did not touch the thumb latch, whereas Ruel stated that Lee pushed on the thumb latch. Lee testified that he was able to close the cylinder

"when [he] rechambered the third round," that it opened and closed normally, that he noticed nothing different when loading the third round, and that the gun fired just as it had every other time, but that when he shot he had the sensation that "somebody hit me with a sledgehammer in the face." When he fired the gun, Lee testified, "it didn't sound right, something was different," and he saw a "bright flash." Following the grant of the motion in limine, Lee agreed to a stipulated dismissal, preserving his right to appeal the district court's ruling. The court granted the motion and dismissed the case.

Ruel's expert testimony should have been admitted. Ruel had the appropriate qualifications, he used reliable methods, and his opinion was based on physical evidence from the accident. Ruel's theory was based on the facts conveyed by the physical evidence (the gun), and Ruel used reliable scientific methods—engineering skills—in rendering his opinion. In preparing his report, Ruel reviewed the revolver itself, numerous reports and witness accounts of the accident, Lee's medical reports, and photos of the revolver. After examining the gun, Ruel concluded that it "could be cocked ready to fire by a pull of the trigger without its cylinder being fully closed." He also determined that the revolver's ejector rod "although screwed in place was not secure and could easily be loosened by fingers alone," and that the "ejector rod loosened, [which] initially caused the cylinder and yoke to bind making closing of the cylinder difficult and then prevented it from fully closing and locking. This is what occurred and was the cause of Mr. Lee's accident." Ruel concluded that "Lee's accident was the result of his revolver firing without its cylinder fully closed and locked."

"The [Rule 702] inquiry is a flexible one . . . [and its focus] must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. The district court correctly observed that Lee's testimony was that he closed the cylinder, locked it into place, cocked the hammer, pulled the trigger, and fired; by contrast, Ruel's opinion was that the cylinder was open when the gun was fired. Although Ruel's expert theory contradicted Lee's testimony in this way, "[t]he rule in Ohio, as well as in federal practice, is that a party is not precluded from proving his case by any relevant evidence, even though that evidence may contradict the testimony of a witness previously called by him." *Dickerson v. Shepard Warner Elevator Co.*, 287 F.2d 255, 260 (6th Cir. 1961). Ruel planned to opine that the gun was

defective in design and manufacture because it could be cocked and fired with a pull of the trigger while the cylinder was not closed and locked; that its ejector rod could become loose, preventing its cylinder from closing and locking; and that Smith & Wesson failed to provide adequate warning that the gun could be fired without the cylinder closed and locked and of the hazard of hot gases being ejected by the gun when it was fired without the cylinder closed and locked. If Lee was mistaken about whether he fully closed the cylinder, this testimony would be highly relevant to determining whether the gun was defective.

In light of this possibility, a jury presented with no believable alternative explanation could believe that Lee's testimony was wrong. Lee testified that he closed the chamber and fired the gun, without incident. However, a reasonable fact finder could conclude that Lee *thought* he had closed the chamber but in fact did not, and instead overlooked the opening, which Ruel suggests was the case in Lee's accident. Witness Tom Temple, Lee's friend, to whom Lee handed the gun after the misfire, testified that the cylinder was open at the time Lee handed it to him. Another witness confirmed the chamber was open when Lee put the gun down. This evidence supports Ruel's theory and contradicts Lee's testimony. In short, it is not a foregone conclusion that the jury would agree with Lee that he fully closed the chamber and was able to cock the gun without difficulty before firing it.

In this situation, the expert's evidence should have been admitted. This conclusion is directly supported by our decision in *Greenwell v. Boatwright*, 184 F.3d 492, 497–98 (6th Cir. 1999). That was a motor vehicle collision case in which plaintiff's theory relied on "fish-tailing" by defendant's truck before the collision, whereas defendant's accident-reconstruction expert's theory was that the truck was not "fish-tailing" before the collision. There was eyewitness evidence of fish-tailing, but the expert's testimony was based on physical evidence. Applying a *Daubert* analysis, we upheld the admission of the expert testimony, reasoning that "[the difference between the expert's testimony and the eyewitnesses' testimony goes to the conclusion that each witness reached as to the cause of the accident" and that "[e]xpert testimony is not inadmissible simply because it contradicts eyewitness testimony." *Id.* at 497. We relied on the fact that the party opposing the expert testimony "d[id] not challenge the factual basis of

the expert's testimony—the physical evidence." *Id.* Similarly in this case, Smith & Wesson did not challenge the factual underpinnings of Ruel's testimony—the physical evidence.

It is true that expert testimony should be excluded if it relies on facts that no jury could accept, or relies on the rejection of facts that any jury would be required to accept. Thus we qualified our holding in *Greenwell* by explaining that "[e]xpert testimony, however, is inadmissible when the facts upon which the expert bases his testimony contradict the evidence." *Id.* at 497. We explained that, for parties opposing the expert testimony "to succeed on this issue, they would have had to present facts that plainly contradict the physical evidence upon which the expert based his theory of the accident." *Id.* at 498. The witness testimony in this case did not do so. For the reasons explained above, a jury relying on the expert testimony could reject parts of Lee's testimony that aspects of the expert's testimony imply were mistaken.

Lee's case is thus different from cases in which we have properly rejected expert testimony as inconsistent with the plain facts. For instance, in *United States v. LeBlanc*, 45 F. App'x 393, 400–01 (6th Cir. 2002), we upheld the exclusion of expert testimony regarding coercive or suggestive interviewing techniques because the defendant made no foundational showing to establish that improper interview techniques were used to interview a child sexual abuse victim. We noted that, "[a]t no time during the *Daubert* hearing did [the expert] point to a single instance in which [the child] was supposedly subjected to allegedly coercive or suggestive questioning techniques." *Id.* Therefore, "without any showing whatsoever that improper techniques were used with *this witness,* [the expert's] testimony would have presented the jury with an abstract theory having the potential to presumptively malign the testimony of [the child] as a product of coercion in the absence of any evidence that such was the case." *Id.* at 401. By contrast, in this case it is clear that Lee shot the gun, that an explosion resulted, and that he either did or did not fully close the cylinder before shooting. In *Mohney v. USA Hockey, Inc.*, 138 F. App'x 804, 809 (6th Cir. 2005), we upheld the exclusion of expert testimony in part because the expert used estimates and assumptions rather than actual data in the mathematical equations used to support a theory of how a face-masked ice hockey player was injured by crashing into the boards. There is no such use of questionable data in Ruel's physical inspection of the revolver.

Lee's memory and Ruel's deductions both clearly reject Smith & Wesson's argument that the injury was caused by heavy recoil.  Therefore, the central factual issue—the cause of Lee's injury—was still in dispute, and the mismatch between Lee's and Ruel's theories of whether the cylinder was fully closed should not have precluded the admissibility of Ruel's expert opinion.  Even under the deferential abuse-of-discretion standard, the district court's exclusion of Ruel's testimony as inadmissible under Rule 702 was not proper.

The party advocating exclusion in *Greenwell* also made the distinct argument that that the expert's testimony was not admissible because it contradicted judicial admissions made by the other party. 184 F.3d at 498.  We do not understand Smith & Wesson to be making this alternative argument.  Lee's deposition testimony, in any event, does not constitute a judicial admission.  In *Greenwell*, we rejected the argument because the statements in question were either opinions, rather than facts, or ambiguous and unclear.  *Id.*  Moreover, the cases cited in *Greenwell* for the exclusion of evidence contrary to judicial admissions are cases in which the admission was in the pleadings or in the opening argument *of counsel.  See Ferguson v. Neighborhood Hous. Serv.*, 780 F.2d 549, 550–51 (6th Cir. 1986) (admission in answer pleading); *MacDonald v. General Motors Corp.*, 110 F.3d 337, 339–40 (6th Cir. 1997) (admission in opening statement by counsel).  The purpose of the doctrine is to promote the expedition of trials by allowing parties to rely upon lawyers' admissions.  "In order to qualify as judicial admissions, an attorney's statements must be deliberate, clear and unambiguous."  *Id.* at 340 (citing *Oscanyan v. Arms Co.,* 103 U.S. 261, 263 (1880)).

Here Smith & Wesson points to no judicial admission on the part of Lee in his represented status as plaintiff.  Instead, Lee as a witness testified as to what he remembered.  A tort plaintiff should be able to testify honestly to his memory of what happened and still have his lawyer argue that on the evidence as a whole it is more probable than not that the memory was faulty.  If no jury could reasonably conclude that the plaintiff's memory was faulty, dismissal would be warranted.  But that is not the case on this record.

Accordingly, we reverse the district court's judgment and remand for further proceedings.

_____

**DISSENT**

_____

DAMON J. KEITH, Circuit Judge, dissenting.  I respectfully dissent. In my view, the district court judge properly exercised his discretion in performing the required gatekeeping duties under Rule 702 when he excluded Ruel's testimony on the basis that it did not "fit" the facts of this case and, therefore, did not satisfy the relevancy requirement of Rule 702. The majority disregards this lack of fit, concluding that despite the vast differences between Ruel's "theory" and Plaintiff's actual account of his actions, Ruel's testimony is nevertheless relevant. But *Daubert* does not require that a trial judge open the gate to all speculation, especially speculation from an expert who openly admitted that he disregarded the Plaintiff's account of the events in reaching his hypothesis. Thus, for the following reasons, I would **AFFIRM** the decision of the district court.

This Court reviews the trial court's decision to admit or exclude expert testimony for abuse of discretion.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  In order to find an abuse of discretion, we must be "firmly convinced" that a mistake has been made. *United States v. Williams*, 952 F.2d 1504, 1518 (6th Cir. 1991).  Indeed, the district court has broad discretion as a gatekeeper to determine the admissibility of scientific testimony. *Pride v. BIC Corp.*, 218 F.3d 566, 577-78 (6th Cir. 2000).

Under Rule 702, a witness may offer specific, technical, scientific, or other specialized testimony only if the following three requirements are met: (1) the witness is qualified by knowledge, skill, experience, training, or education; (2) his testimony is relevant; and (3) his testimony is reliable.  *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008). The "relevancy" prong of Rule 702 requires that an expert's theory adequately "fit" the facts of the case.  *See Daubert*, 509 U.S. at 591.  Expert testimony that does not fit the facts does not relate to an issue in the case and, therefore, is not relevant.[1]  *Id.*

_____

[1]Although a relevance issue, the standard for fit is "higher than bare relevance." *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 745 (3d Cir. 1994).  In short, under *Daubert* and its progeny, a party proffering expert testimony must show by a "preponderance of proof" that the expert whose testimony is being offered is qualified

The district court judge found that Ruel's testimony did not "fit" the facts of the case:

> Lee testified he had no difficulty whatsoever firing the gun a third time. He even denied what Ruel speculates he did: Try, but fail, to pull the trigger. In fact, Lee said everything was exactly the same as when he fired the first two shots. Lee also testified, contrary to Ruel's theory, that the cylinder was closed when he fired the third round. In addition, Lee's demonstration, as depicted in a photograph included in Defendant's brief, makes clear that he never touched he thumb piece during the firing sequence, as Ruel speculates he did.

(internal citations omitted).  R. 52, at 2, Memorandum of Opinion.

I agree that this was the right conclusion. In conducting his gatekeeping function, the judge may exclude testimony which he does not believe is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *LeBlanc*, 45 F. App'x at 400 (*quoting United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985)). Several cases have held that a judge is well within her discretion to exclude potential testimony which she believes does not fit the facts of the case and is contradicted by the available testimony. *See, e.g., Mohney v. USA Hockey, Inc.*, 138 F. App'x 804, 809 (6th Cir. 2005); *Pride*, 218 F.3d at 275;[2] *Fuesting v. Zimmer, Inc.*, 421 F.3d 528, 535–36 (7th Cir. 2005), *vacated in part on other grounds*, 448 F.3d 936 (7th Cir. 2006); *J.B. Hunt Transport, Inc. v. General Motors Corp.*, 243 F.3d 441, 444 (8th Cir. 2001); *Cipollone v. Yale Indus. Products, Inc.*, 202 F.3d 376, 379 (1st Cir. 2000); *Bradley v. Armstrong Rubber Co.*, 130 F.3d 168, 176-78 (5th Cir. 1997); *Guillory v. Domtar Industries Inc.*, 95 F.3d 1320, 1330 (5th Cir. 1996); *Lava Trading, Inc. v. Hartford Fire Ins. Co.*, 03 CIV. 7037 (PKC), 2005 WL 4684238 * at 21 (S.D.N.Y. Apr. 11, 2005); *Reali v. Mazda Motor of Am., Inc.*, 106 F. Supp. 2d 75, 78 (D. Me. 2000); *cf. Bogosian v. Mercedes-Benz of No. America, Inc.*, 104 F.3d 472, 479 (1st Cir. 1997) (excluding as irrelevant expert testimony because in

---

and will testify to scientific knowledge that will assist the trier of fact in understanding and disposing of issues relevant to the case. *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000); *see also United States v. LeBlanc*, 45 F. App'x 393, 400 (6th Cir. 2002).

[2] *Pride* is particularly instructive. That case concerned a mishap of a BIC lighter, which unexpectedly exploded, causing the plaintiff's death. One of the plaintiffs' experts testified that "that the globe seal was 'cockeyed' when the lighter left the manufacturer, that the misaligned seal permitted a fuel leak that caused the lighter to fail to extinguish, and that the failure to extinguish caused the conflagration that killed Mr. Pride." *Id.* at 578. However, other testimony supported a theory that "that the globe seal was properly aligned when the lighter was manufactured." *Id.* at 574, 578. We held that, where the theory is "contradicted by the testimony of one of Pride's other experts and by laboratory tests," the scientific testimony does not "'fit' the facts of the case," and the trial judge's decision to exclude the testimony should be undisturbed. *Id.* at 577–78.

performing test the expert "did not, in any way, attempt to replicate the known facts surrounding the injury-producing event").

Ruel's theory posits that Lee was mistaken about whether he fully closed the gun's cylinder, which would ostensibly be relevant in determining whether the gun was defective. Although certainly a possibility, the trial judge is not required to navigate the outer-most bounds of speculation, especially where the facts of the case do not support the hypothesized condition. Particularly probative is Ruel's imputation that Lee *deliberately* manipulated the firearm—and in a highly unusual manner—both of which are wholly unsupported by the record.[3] This key incongruity, in light of the extensive case law in support, convinces me that the trial judge did not abuse his discretion in excluding the testimony under his "gatekeeping" duties. Indeed, "[n]othing either in *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to the existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). To find an abuse of discretion where a judge refuses to accept such a great analytical gap, as was done here, runs the risk of creating a one-size-fits-all standard of expert evidence that makes the relevancy requirement a nullity. Ruel's theory fit a "set" of facts but not the facts at bar. As such, I would conclude that, on these grounds, the judge did not abuse his discretion in excluding the expert testimony and affirm the decision of the district court.

---

[3]In order to simultaneously a) hold the thumb piece rearward, b) cock the hammer, and c) pull the trigger, Lee would have to make a truly unusual hand maneuver, which is controverted by the manner in which Lee stated that he held the gun. *See* R. 46-9, Deposition Transcript of Mark Lee, Page ID #1036-37.